IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.B.B.C., a MINOR CHILD, by and through his father and next friend, Carlos Emilio Barrera Rodriguez, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHAD WOLF, Acting Secretary of Department of Homeland Security, et al.,<br><br>Defendants. | Civil Docket No. 1:20-cv-01509 (CJN) |

## DEFENDANTS' MOTION TO DISMISS

For the reasons explained in the accompanying memorandum of law, Defendants respectfully move to dismiss all claims raised in Plaintiffs' amended complaint. *See* Fed. R. Civ. P. 12(b)(1).

Dated: July 23, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

DAVID MORRELL
Deputy Assistant Attorney General

/s/ *Jean Lin*
JEAN LIN (NY Bar 4074530)
Special Litigation Counsel
KEVIN SNELL
BRADLEY CRAIGMYLE
Trial Attorneys
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.Lin@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| J.B.B.C., a MINOR CHILD, by and through his father and next friend, Carlos Emilio Barrera Rodriguez, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHAD WOLF, Acting Secretary of Department of Homeland Security, et al., <br><br> Defendants. | Civil Docket No. 1:20-cv-01509 (CJN) |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................. 2

LEGAL STANDARD ..................................................................................................................... 5

ARGUMENT .................................................................................................................................. 6

I.    THIS CASE IS MOOT BECAUSE THERE IS NO ACTUAL ONGOING
CONTROVERSY BETWEEN THE PARTIES ................................................................... 6

II.    NO EXCEPTION TO MOOTNESS APPLIES ................................................................... 9

   A.    The Voluntary Cessation Doctrine Is Inapplicable .............................................. 9

   B.    The "Capable of Repetition Yet Evading Review" Exception Is Inapplicable ................ 10

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Almaqrami v. Pompeo*,
   933 F.3d 774 (D.C. Cir. 2019) .................................................................................... 5, 6

*Am. Bar Ass'n v. FTC*,
   636 F.3d 641 (D.C. Cir. 2011) ........................................................................................ 9

*Am. Freedom Law Ctr. v. Obama*,
   821 F.3d 44 (D.C. Cir. 2016) .......................................................................................... 6

*Autor v. Blank*,
   161 F. Supp. 3d 111 (D.D.C.),
   *aff'd sub nom. Autor v. Pritzker*, 843 F.3d 994 (D.C. Cir. 2016) .................................... 8

*\*Chafin v. Chafin*,
   568 U.S. 165 (2013) .................................................................................................. 5, 6, 7

*City of Erie v. Pap's A.M.*,
   529 U.S. 277 (2000) ........................................................................................................ 6

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) .................................................................................................... 5

*\*Clarke v. United States*,
   915 F.2d 699 (D.C. Cir. 1990) (en banc) ........................................................... 9, 10, 11

*Conyers v. Reagan*,
   765 F.2d 1124 (D.C. Cir. 1985) .................................................................................... 10

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979) ........................................................................................................ 9

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ........................................................................................................ 5

*Del Monte Fresh Produce Co. v. United States*,
   570 F.3d 316 (D.C. Cir. 2009) ...................................................................................... 11

*Diamond v. Charles*,
   476 U.S. 54 (1986) .......................................................................................................... 8

*Epstein v. Geren*,
   539 F. Supp. 2d 267 (D.D.C. 2008) .............................................................................. 10

*FEC v. Wis. Right to Life, Inc.*,
  551 U.S. 449 (2007) .................................................................................................... 10

*Guedes v. ATF*,
  920 F.3d 1 (D.C. Cir.),
  *judgment entered*, 762 F. App'x 7 (D.C. Cir. 2019), *cert. denied*, 140 S. Ct. 789 (2020).......... 9

*Hewitt v. Helms*,
  482 U.S. 755 (1987) ..................................................................................................... 7

*Honeywell Int'l, Inc. v. Nuclear Reg. Comm'n*,
  628 F.3d 568 (D.C. Cir. 2010) ...................................................................................... 6

*Knox v. Serv. Emps. Int'l Union*,
  567 U.S. 298 (2012) ..................................................................................................... 6

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990) ..................................................................................................... 8

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ..................................................................................................... 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................... 7

*\*Planned Parenthood of Wis., Inc. v. Azar*,
  942 F.3d 512 (D.C. Cir. 2019) ...................................................................................... 6

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
  856 F.3d 1080 (D.C. Cir. 2017) ............................................................................ 11, 12

*Spencer v. Kemna*,
  523 U.S. 1 (1998) ....................................................................................................... 11

*Thomas R.W. ex rel. Pamela R. v. Mass. Dep't of Educ.*,
  130 F.3d 477 (1st Cir. 1997) ........................................................................................ 8

*True the Vote, Inc. v. IRS*,
  831 F.3d 551 (D.C. Cir. 2016) ...................................................................................... 6

*United Brotherhood of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*,
  721 F.3d 678 (D.C. Cir. 2013) .................................................................................... 11

*United States v. Chem. Found.*,
  272 U.S. 1 (1926) ....................................................................................................... 10

*United States v. Juvenile Male*,
  564 U.S. 932 (2011) ................................................................................................................. 5

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................................................. 8

*Zukerman v. USPS*,
  961 F.3d 431 (D.C. Cir. 2020) ................................................................................................. 6

**Statutes**

8 U.S.C. § 1225 ............................................................................................................................. 4

8 U.S.C. § 1229 ............................................................................................................................. 4

8 U.S.C. § 1229a ............................................................................................................... 4, 5, 7, 10

8 U.S.C. § 1232 ........................................................................................................................... 4, 5

28 U.S.C. § 2412(d)(1)(B) ............................................................................................................. 8

42 U.S.C § 265 ............................................................................................................................... 2

42 U.S.C § 268 ............................................................................................................................... 2

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
  Pub. L. No. 110-457, 122 Stat 5044 (2008) ............................................................................. 4

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................. 6

**Regulations and Orders**

8 C.F.R. § 1003.1 ........................................................................................................................... 4

85 Fed. Reg. 16559 (Mar. 24, 2020) .............................................................................................. 2

85 Fed. Reg. 17060 (Mar. 26, 2020), ....................................................................................... 2, 10

85 Fed. Reg. 22424 (Apr. 20, 2020) .............................................................................................. 2

85 Fed. Reg. 31503 (May 21, 2020) .............................................................................................. 2

**Other Authorities**

Exec. Off. for Immigr. Rev., *Adjudication Statistics: Median Unaccompanied Alien Child (UAC) Case Completion and Case Pending Time*,
  https://www.justice.gov/eoir/page/file/1061551/download (Apr. 15, 2020) ........................... 11

## **INTRODUCTION**

Plaintiffs are two alien minors from Honduras and Guatemala, respectively, who have received all the relief they seek in this lawsuit—to be placed in immigration proceedings to assert their asylum and other claims for protection from removal. This case is moot and should be dismissed.

In the face of the historic COVID-19 pandemic, the United States has implemented many measures to combat the highly contagious disease, including closing the Nation's borders to nonessential travel and significantly restricting international air travel. The Director of the Centers for Disease Control and Prevention ("CDC") also issued an order temporarily prohibiting the movement of certain aliens into the United States from Canada and Mexico regardless of their country of origin. He did so because of outbreaks in Canada and Mexico and the fact that aliens subject to the order typically are held for extended periods of time in congregate settings during immigration processing, presenting a significant risk of transmitting COVID-19 within border facilities and across border communities.

Plaintiffs previously were determined to be subject to the CDC Order after they illegally crossed the U.S.-Mexico border into the United States. They sued to prevent the Government from returning them to their home countries pursuant to the CDC Order and to require the Government to afford them the immigration procedures that otherwise would be applicable without the CDC Order. The Government has done exactly that. It has excepted Plaintiffs from the CDC Order and transferred them to the Office of Refugee Resettlement in the Department of Health and Human Service. In fact, both Plaintiffs have been placed with family members in the interior of the United States. The Government also has initiated removal proceedings for each Plaintiff. In those proceedings, Plaintiffs may raise their claims for asylum or for any other form of relief or protection from removal from the United States. And the Government has further confirmed through sworn declarations that Plaintiffs will not be taken out of those immigration proceedings to be processed under the CDC Order. Accordingly, there is no live case or controversy between the parties, and the case should be dismissed as moot.

## BACKGROUND

As Defendants previously detailed, COVID-19 is a communicable disease that spreads easily and rapidly without regard to national borders. *See* Defs.' Opp'n to Pl.'s Emergency Mot. for a TRO at 3-15, ECF No. 28. To mitigate the risks presented by the COVID-19 global pandemic, the CDC Director temporarily prohibited the "introduction"[1] of certain aliens traveling into the United States from Canada and Mexico, both of which have been severely impacted by COVID-19.[2] Issued pursuant to the Public Health Service Act, 42 U.S.C §§ 265, 268, and an Interim Final Rule promulgated thereunder, 85 Fed. Reg. 16563, the CDC Director's Order required the return of all aliens subject to the Order as rapidly as possible and with as little time spent in congregate settings as feasible to the country from which they entered the United States, to their country of origin, or to another location as practicable. 85 Fed. Reg. at 17067. Customs officers may, with supervisory approval, except otherwise covered aliens from the Order based on the totality of the circumstances, including considerations of significant law enforcement, officer and public safety, humanitarian, and public health interests. *Id.*

Plaintiff J.B.B.C. was initially determined to be subject to the CDC Order after he was apprehended on June 4, 2020, approximately one mile from the border after illegally entering the United States near El Paso, Texas. First Am. Compl. ¶ 5, ECF No. 42; Declaration of Robert Danley, ¶¶ 3, 4, dated June 17, 2020, ECF No. 28-5. He was thus scheduled for return to his home

---

[1] The CDC defines "introduction into the United States of persons" from a foreign country to "encompass those who have physically crossed a border of the United States and are in the process of moving into the interior in a manner the Director determines to present a risk of transmission of a communicable disease." Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16559, 16563 (Mar. 24, 2020).

[2] *See* Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17060, 17061 (Mar. 26, 2020), *as extended and/or amended by* Extension of Order Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 22424 (Apr. 20, 2020), *and* Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 31503-02 (May 21, 2020).

country, Honduras, and was moved to a hotel to await the next available flight. Declaration of Danielle Hernandez, ¶¶ 4, 5, dated June 17, 2020, ECF No. 28-6. On June 9, 2020, Defendants voluntarily agreed to remove him from the scheduled flight, and J.B.B.C. filed suit the same day along with a motion for a temporary restraining order. *See* Pl.'s Emergency Mot. for TRO, ECF No. 2. Following expedited briefing and a hearing, the Court entered an order prohibiting Defendants from "return[ing] [J.B.B.C.] to his home country or remov[ing] or otherwise expel[ling] [him] from the United States unless and until the Court resolves this action on the merits." Order at 1, ECF No. 38.

On June 28, 2020, undersigned counsel notified J.B.B.C.'s counsel that Defendants intended to except J.B.B.C. from the CDC Order. The next day, Defendants further notified counsel and the Court that they "ha[d] transferred the custody of [J.B.B.C.] to the Office of Refugee Resettlement (ORR), Department of Health and Human Services, for immigration processing under Title 8 of the U.S. Code." Notice to the Court at 1, ECF No. 41. Defendants explained that "[b]ecause [J.B.B.C.] is now excepted from processing under Title 42 and will no longer be subject to the challenged CDC Order," they "anticipate moving to dismiss this case." *Id.*

Although J.B.B.C.'s case had become moot, an amended complaint was filed on July 2, 2020, adding a new plaintiff, E.Y., a Guatemalan minor, to this action. *See* First Am. Compl. E.Y. was apprehended by agents of U.S. Customs and Border Protection ("CBP") on June 26, 2020, after illegally entering the United States near McAllen, Texas. Second Declaration of Robert Danley, ¶¶ 2, 3, dated July 20, 2020 (attached). CBP determined that he was subject to the CDC Order and, on June 30, 2020, transferred him to U.S. Immigration and Customs Enforcement ("ICE") to be returned to Guatemala. *Id.* ¶ 3. Plaintiffs filed the First Amended Complaint on July 2, 2020, shortly after requesting that the Government delay E.Y.'s return to Guatemala. That same day, Defendants excepted E.Y. from the CDC Order to process him pursuant to the immigration procedures set forth in Title 8 of the U.S. Code. *Id.* ¶ 4. Shortly thereafter, E.Y. was transferred to ORR custody. *Id.*

As with the initial complaint, the First Amended Complaint seeks an order (1) declaring

the CDC Order unlawful as applied to Plaintiffs; (2) enjoining Defendants from applying the Order to Plaintiffs; and (3) staying Plaintiffs' "expulsion, remov[ing] them from the Title 42 Process [*i.e.,* the CDC Order], and . . . afford[ing] them the [Trafficking Victims Protection Reauthorization Act's] statutory requirements and protections, as well as the procedures guaranteed by the [Immigration and Nationality Act] including access to asylum, withholding of removal, [Convention Against Torture] relief, and all other forms of relief to which they [are] eligible." First Am. Compl., Prayer for Relief ¶¶ a-c. Plaintiffs further seek attorneys' fees and such further relief as the Court deems just. *Id.* ¶¶ d-e.

Each Plaintiff has since been issued a Notice to Appear, which places him in removal proceedings under Title 8 of the U.S. Code. Second Danley Decl. ¶ 4; Second Declaration of Danielle Hernandez, ¶ 4, dated July 17, 2020 (attached). They will not be removed from those immigration proceedings to be processed under the CDC Order. *See* Second Danley Decl. ¶ 4; Second Hernandez Decl. ¶ 4. Section 1225(b)(2)(A) of Title 8 authorizes removal proceedings for any "applicant for admission" whom an immigration officer determines is not clearly and beyond a doubt entitled to be admitted. 8 U.S.C. § 1225(b)(2)(A).[3] Such an alien "shall be detained for a proceeding under section 1229a of this title." *Id.* Section 1229a, in turn, sets out the procedures for full removal proceedings, which begin with a Notice to Appear and involve a hearing before an immigration judge with review by the Board of Immigration Appeals. *See id*. §§ 1229, 1229a; 8 C.F.R. § 1003.1. In removal proceedings, the alien may seek asylum or any other form of relief or protection from removal from the United States. *See* 8 U.S.C. § 1229a(a)(2), (c)(4).

Section 235 of the William Wilberforce Trafficking Victims Protection and Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457 (codified in principal part at 8 U.S.C. § 1232), provides certain additional protections to unaccompanied alien children subject to

---

[3] An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

4

the removal scheme under Title 8's immigration provisions. For example, an unaccompanied child from a non-contiguous country sought to be removed generally must be placed in removal proceedings under 8 U.S.C. § 1229a, in lieu of expedited removal proceedings. *See* 8 U.S.C. § 1232(a)(5)(D)(i). And an unaccompanied child who remains in the country must be transferred to the custody of ORR, which then must place the child with a care provider in the least restrictive setting that is in the best interest of the child, subject to considerations of danger to self, danger to others, and risk of flight. *See id.* § 1232(c)(2)(A).

Pursuant to the TVPRA, both Plaintiffs have now been placed with "suitable family member[s]," *id.*—namely, their respective fathers in the United States.

## LEGAL STANDARD

Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." The Supreme Court has explained that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). This means that a federal court has jurisdiction only if a plaintiff "ha[s] suffered, or [is] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Id.* (alteration in original) (citation omitted).

This "case-or-controversy requirement subsists through all stages of federal judicial proceedings." *Id.* That is, a plaintiff must satisfy Article III's requirements "throughout the litigation," "not merely at the time the complaint is filed." *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (alteration omitted) (citations omitted). "A lawsuit becomes moot—and is therefore no longer a 'Case' or 'Controversy'—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Almaqrami v. Pompeo*, 933 F.3d 774,

779 (D.C. Cir. 2019) (quoting *Chafin*, 568 U.S. at 172).  This happens when "it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party."  *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)); *accord Zukerman v. USPS*, 961 F.3d 431, 441 (D.C. Cir. 2020); *see, e.g.*, *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) (case moot where the requested injunctive relief "would have no effect" and court could grant no "effectual relief to the prevailing party").

Because mootness goes to a federal court's very power to act, a motion to dismiss based on mootness is brought under Federal Rule of Civil Procedure 12(b)(1).  *True the Vote, Inc. v. IRS*, 831 F.3d 551, 558 (D.C. Cir. 2016).  The party raising mootness has the burden of showing that the case is moot, but the opposing party bears the burden of showing an exception applies. *Honeywell Int'l, Inc. v. Nuclear Reg. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010).  A court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016).

## ARGUMENT

### I. THIS CASE IS MOOT BECAUSE THERE IS NO ACTUAL ONGOING CONTROVERSY BETWEEN THE PARTIES

The Court should dismiss this case for lack of jurisdiction because there is "no actual, ongoing controvers[y]" between the parties.  *Zukerman*, 961 F.3d at 441 (citation omitted). Plaintiffs seek (1) to stop Defendants from returning them to their home countries pursuant to the CDC Order and (2) to be afforded the immigration procedures set forth in Title 8.  Defendants have already provided that relief.  Thus, the requested declaratory and injunctive relief "would have no effect" and the Court could grant no "effectual relief" to Plaintiffs.  *Planned Parenthood*, 942 F.3d at 516.

Specifically, Plaintiffs allege that they are injured by Defendants' application of the CDC Order to them, *see* First Am. Compl. ¶¶ 121–22, 129, 134, 139, 146, 154, 157–58, and to remedy this alleged injury, they ask the Court to "[d]eclare unlawful the [CDC Order] as applied to [them]," enjoin Defendants from applying the CDC Order to them, and stay their "expulsion"

6

under the CDC Order. *See id.* Prayer for Relief ¶¶ a-c. As the attached declarations indicate, Defendants have already excepted Plaintiffs from the CDC Order and are no longer returning Plaintiffs to their home countries under that Order. *See* Second Danley Decl. ¶ 4; Second Hernandez Decl. ¶ 4. Thus, Plaintiffs no longer have a personal stake in any dispute about the legality of the Order because the Order is not being applied to them. An order declaring the CDC Order unlawful as applied to Plaintiffs, or enjoining Defendants from applying the CDC Order to Plaintiffs, would thus have no actual, concrete effect in addressing Plaintiffs' alleged injury—indeed, it would have no effect on their situation at all, because they have already been placed in removal proceedings under Title 8, exactly as they requested. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (Article III requires a plaintiff to show a likelihood "that the injury will be redressed by a favorable decision"). Instead, such an order would contravene Article III's proscription against deciding "questions that cannot affect the rights of litigants in the case." *Chafin*, 568 U.S. at 172 (citation omitted)).

The same is true with respect to Plaintiffs' request that the Court "afford them the . . . statutory requirements and protections [under Title 8 of the U.S. Code]," including those under the TVPRA. First Am. Compl., Prayer for Relief ¶ c. Not only have Plaintiffs been transferred to ORR custody pursuant to the TVPRA, but they also have been placed in removal proceedings pursuant to Title 8 where they can seek asylum or any other form of relief or protection from removal from the United States. *See* Second Danley Decl. ¶ 4; Second Hernandez Decl. ¶ 4; *see also* 8 U.S.C. § 1229a(a)(2), (c)(4). They will not be taken out of those immigration proceedings to be processed under the CDC Order. Second Danley Decl. ¶ 4; Second Hernandez Decl. ¶ 4. If they are eventually removed to their home countries at the conclusion of those removal proceedings, it would not be due to the application of the CDC Order.

As the Supreme Court has explained, "a judicial decree is not the end but the means." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). "At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct." *Id.* A judicial decree

7

in favor of Plaintiffs now would have no effect because the Government is already giving them exactly what they seek in this action. Plaintiffs cannot show that they "personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 508 (1975).

The two remaining prayers for relief similarly do not preserve a live case or controversy. First, Plaintiffs seek attorneys' fees under the Equal Access to Justice Act ("EAJA"). *See* First Am. Compl., Prayer for Relief ¶ d. But "[an] interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (citing *Diamond v. Charles*, 476 U.S. 54, 70–71 (1986)). Indeed, any litigation concerning any purported entitlement to attorneys' fees under EAJA would occur only after final judgment or dismissal. *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party . . . ."); *see, e.g.*, *Autor v. Blank*, 161 F. Supp. 3d 111, 113 (D.D.C.) (EAJA fee denied because plaintiffs were not "prevailing parties" within the meaning of EAJA after Government voluntarily agreed to the requested relief and case was dismissed), *aff'd sub nom. Autor v. Pritzker*, 843 F.3d 994 (D.C. Cir. 2016).

Second, Plaintiffs' general prayer for "such further relief as the Court deems just, equitable, and appropriate," First Am. Compl., Prayer for Relief ¶ e, is merely an unspecified, catch-all prayer that is insufficient to avoid mootness. *Cf. Thomas R.W. ex rel. Pamela R. v. Mass. Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir. 1997) (plaintiff's general prayer for "such further relief as this court deems just and proper" could not "operate to preserve a request for damages in order to avoid mootness where there [was] no specific request and no evidence to sustain a claim for reimbursement"). Indeed, as discussed above, Plaintiffs have received all material terms of their requested relief.

There is no effective relief that this Court could grant Plaintiffs, and, thus, this action is moot.

## II.  NO EXCEPTION TO MOOTNESS APPLIES

To the extent they try, Plaintiffs cannot keep this case alive by invoking an exception to the mootness doctrine. Neither of the two exceptions to the mootness doctrine applies here. Those exceptions are the voluntary cessation doctrine and the "capable of repetition yet evading review" doctrine.

### A. The Voluntary Cessation Doctrine Is Inapplicable

"The voluntary-cessation rule is designed to deter the [alleged] wrongdoer who would otherwise engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Guedes v. ATF*, 920 F.3d 1, 15 (D.C. Cir.) (per curiam), *judgment entered*, 762 F. App'x 7 (D.C. Cir. 2019), *cert. denied*, 140 S. Ct. 789 (2020) (citation omitted). For that reason, "[v]oluntary cessation will only moot a case if 'there is no reasonable expectation . . . that the alleged violation will recur' and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). To determine whether there is a reasonable expectation that the alleged violation will occur, the Court must "defin[e] the wrong that the defendant is alleged to have inflicted." *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc). Here, the wrongs Defendants are alleged to have inflicted on Plaintiffs are the application of the CDC Order to Plaintiffs and the deprivation of immigration procedures otherwise applicable to Plaintiffs without the CDC Order. *See* First Am. Compl., Prayer for Relief ¶¶ a-c; *see also Clarke*, 915 F.2d at 703 ("[W]here plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief.").

As confirmed by the attached declarations of officials at CBP and ICE, *see* Second Danley Decl. ¶ 4; Second Hernandez Decl. ¶ 4, there is no reasonable expectation that Defendants will remove Plaintiffs from the ongoing Title 8 immigration proceedings, to which Plaintiffs are now subject, to again process them under the CDC Order. Defendants did not except Plaintiffs from

9

the CDC Order to moot the case so that it could again apply the CDC Order to Plaintiffs after this case is dismissed.  Indeed, coordinate branches of Government are presumed to act in good faith. *See Clarke*, 915 F.2d at 705 ("At least in the absence of overwhelming evidence (and perhaps not then), it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose."); *see also United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("[I]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties."); *Epstein v. Geren*, 539 F. Supp. 2d 267, 275 (D.D.C. 2008) (public officers are entitled to a "strong" presumption that they "discharge their duties correctly, lawfully, and in good faith").

Moreover, while the CDC Order expressly allows customs officers to except otherwise covered aliens from the CDC Order, *see* 85 Fed. Reg. at 17061, it does not provide a mechanism to cut short Plaintiffs' ongoing removal proceedings under 8 U.S.C. § 1229a so as to subject them to the CDC Order again.  The voluntary cessation exception, therefore, does not apply to prevent this case from becoming moot.

### B.  The "Capable of Repetition Yet Evading Review" Exception Is Inapplicable

"The capable of repetition yet evading review doctrine properly applies in cases . . . in which intervening events beyond the control of either the plaintiff or defendant appear to have rendered the claims moot."  *Conyers v. Reagan*, 765 F.2d 1124, 1128 n.9 (D.C. Cir. 1985).  By definition, this exception is inapplicable here because this case was mooted by Defendants' voluntary action, not an intervening event beyond the parties' control.  *See id.* ("In cases in which the defendant voluntarily ceases the complained of activity before the matter is litigated, a different standard [than the capable-of-repetition exception] applies.").

Even if the Court were to consider the exception, Plaintiffs cannot meet the standard. "[T]he capable-of-repetition doctrine applies only in exceptional situations," *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), "where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or

expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alterations in original) (citation omitted); *accord FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). The second prong requires a determination of "exactly what must be repeatable in order to save [the] case from mootness." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (citation omitted). As with the voluntary cessation doctrine, it similarly depends on the injury the defendant is alleged to have inflicted on the plaintiff. *See Clarke*, 915 F.2d at 703 ("Common to both exceptions is the task of defining the wrong that the defendant is alleged to have inflicted."). And "[a] controversy 'is capable of repetition' only if 'the same parties will engage in litigation over the same issues in the future.'" *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017) (citation omitted).

Putting aside the question of whether the challenged action is by its very nature too short in duration so that it could not be adjudicated while fully live, *see United Brotherhood of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, 721 F.3d 678, 688 (D.C. Cir. 2013) ("[T]he 'rule-of-thumb' [is] that 'orders of less than two years' duration ordinarily evade review . . . .'" (quoting *LaRouche v. Fowler*, 152 F.3d 974, 978 (D.C. Cir. 1998))), Plaintiffs cannot meet the second prong of the exception. There is no reasonable expectation that the parties will engage in litigation over the same issues in the future because the Government is unlikely to apply the CDC Order to these Plaintiffs again. Both Plaintiffs have been placed in removal proceedings, which can more than a year to adjudicate. For example, as of the second quarter of Federal Fiscal Year 2020, the median length of time to complete removal proceedings for an unaccompanied alien child is 591 days.[4] Even if Plaintiffs are removed at the end of their removal proceedings potentially more than a year from now, there is no reason to believe that the CDC Order—issued in the face of the public health

---

[4] *See* Exec. Off. for Immigr. Rev., *Adjudication Statistics: Median Unaccompanied Alien Child (UAC) Case Completion and Case Pending Time*, https://www.justice.gov/eoir/page/file/1061551/download (Apr. 15, 2020).

crisis posed by COVID-19—would still be in effect should Plaintiffs again attempt to cross the U.S.-Mexico border illegally. And even if these speculative events are possible, "[a] theoretical possibility, . . . is not sufficient to qualify as 'capable of repetition'[;] . . . [t]here must instead be a reasonable expectation or demonstrated probability' that the action will recur." *Ferrer*, 856 F.3d at 1088 (alterations in original) (citation omitted). Therefore, Defendants' prior application of the CDC Order to Plaintiffs thus is not capable of repetition.

## CONCLUSION

Because this case is moot and no exception to the mootness doctrine applies, the Court should dismiss it for lack of subject matter jurisdiction.

Dated: July 23, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

DAVID MORRELL
Deputy Assistant Attorney General

/s/ *Jean Lin*
JEAN LIN (NY Bar 4074530)
Special Litigation Counsel
KEVIN SNELL
BRADLEY CRAIGMYLE
Trial Attorneys
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.Lin@usdoj.gov
Attorneys for Defendants

*Counsel for Defendants*